**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| STRATOPATENT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:26-cv-00804 |
| | § | |
| SHOPIFY INC., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Stratopatent LLC ("Stratopatent" or "Plaintiff") files this Original Complaint in the Eastern District of Texas (the "District") against Defendant Shopify Inc. ("Shopify" or "Defendant") for infringement of Plaintiff's patents U.S. Patent No. 10,769,198 (the "'198 Patent"), U.S. Patent No. 11,294,952 (the "'952 Patent"), U.S. Patent No. 11,354,622 (the "'622 Patent"), U.S. Patent No. 10,949,861 (the "'861 Patent"), and U.S. Patent No. 11,348,166 (the "'166 Patent"), (collectively referred to as the "Asserted Patents").

## THE PARTIES

1. Plaintiff Stratopatent LLC is a Texas limited liability company with its principal place of business located at 5900 Balcones Drive, Suite 100, Austin, TX 78731.

2. On information and belief, Defendant Shopify Inc. is a corporation organized under the laws of Canada, with its corporate headquarters and principal place of business at 151 O'Connor Street, Ground Floor, Ottawa, Ontario, Canada K2P 2L8. Shopify Inc. is a foreign corporation that is not a resident of any judicial district of the United States.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, namely Title 35 of the United States Code, including 35 U.S.C. §§ 271, 281, and 284–285.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendant's substantial business in the State of Texas and this District, including: (A) at least part of its infringing activities alleged herein which purposefully avail Defendant of the privilege of conducting those activities in this State and this District and, thus, submit Defendant to the jurisdiction of this Court; (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing software, goods, and/or services offered for sale, sold, and imported into Texas and this District. Specifically, Defendant, alone and in concert with its subsidiaries, agents, affiliates, alter egos, software and integration partners, markets, sells, offers for sale, imports, and deploys the accused products and related services to retail customers and users within this District and the State of Texas.

6. This Court has personal jurisdiction over Defendant, directly and/or through the activities of Defendant's alter egos, intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of those based in the U.S. Through direction and control of these entities, Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

7. On information and belief, Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this District and/or has contributed to patent infringement by others in this District, the State of Texas, and elsewhere in the United States. The Court's exercise of jurisdiction over Defendant would not offend

traditional notions of fair play and substantial justice because Defendant has established minimum contacts with the forum with respect to both general and specific personal jurisdiction. As further alleged herein, Defendant acknowledges that although it is a foreign Canadian corporation with a principal place of business in Canada, it also maintains a second "Principal Executive Office[]" in the United States at 85 10th Avenue, Suite 800, New York, New York USA 10011. *See Form 10-K Annual Report for the Fiscal Year Ended December 31, 2025*, SHOPIFY, https://shopifyinvestors.gcs-web.com/static-files/5599c532-a2a7-4435-beda-3b65a7ffa083 at cover page (last visited Aug. 27, 2026) [hereinafter "2025 Annual Report"].

8. On information and belief, Shopify Inc. purposefully directs its e-commerce platform and related services to customers in the United States, including in this District. Additionally, on information and belief, Shopify performs and/or directs and controls global activities (e.g., importation, making, research, design, testing, validation, distribution, sustainability, marketing, sales, offering for sale, and use) of its subsidiaries, affiliates, related companies and brands.

9. On information and belief, Shopify Inc. is the entity that contracts with merchants in the United States, including in this District, to provide Shopify's e-commerce platform and related services. Shopify's Terms of Service provide that a merchant whose billing address is in the "United States or Canada" is "contracting with" "Shopify Inc., a Canadian corporation," as shown below:

| MERCHANT BILLING ADDRESS REGION | SHOPIFY CONTRACTING PARTY/PARTIES | REGISTERED OFFICE | FORUM |
|---|---|---|---|
| United States or Canada | Shopify Inc., a Canadian corporation | 151 O'Connor Street, Ground floor, Ottawa, Ontario, K2P 2L8, Canada | Courts of the Province of Ontario, Canada |

*See Shopify Terms of Service,* SHOPIFY, https://www.shopify.com/legal/terms (last visited Aug. 27, 2026).

10. Shopify Inc.'s 2025 Annual Report on Form 10-K states that ""we", "our", "Shopify" and the "Company" refer to Shopify Inc. and its consolidated subsidiaries" and that, "[a]s of December 31, 2025, [Shopify] had millions of merchants from more than 175 countries using [its] platform," of which "44%" are "in the United States." *See* 2025 Annual Report at 7. Notably, of all the geographic regions where Shopify serves merchants, the percentage of merchants served in the United States significantly exceeds the percentage of merchants served in any other country, especially as the geographic region with the second highest number of merchants is the entire continent of Europe, which, combined, had only "31%" of Shopify's merchants. *Id.* at 7. On information and belief, there are at least "96,578 live Shopify stores" for merchants "in Texas in the United States." *See Shopify Stores in Texas, United States*, STORE LEADS, https://storeleads.app/reports/shopify/US/region/Texas (last visited Aug. 27, 2026). Furthermore, on information and belief, Shopify offers services, including but not limited to its online website platform, to merchants in this District, and the Texas cities with the most stores include several cities in this District such as Plano, Texas, with 1,491 stores; Frisco, Texas, with 1,370 stores, and

McKinney, Texas with 1,042 stores. *See id.*

11. On information and belief, Defendant transacts substantial business in the State of Texas, including in this District. Defendant has committed acts of infringement in the State of Texas, by among other things, importing, making, using, offering to sell and/or selling products and/or services that infringe at least one of the Asserted Patents, including the accused products as alleged herein, as well as providing service and support to its customers in the State of Texas.

12. On information and belief, Defendant has directly or indirectly (e.g., via inducing or contributing to activities) imported, made, used, offered for sale and/or sold products, services, systems, and/or methods that infringe at least one of the Asserted Patents in the United States, Texas, and this District, said products, services, systems, and/or methods including, for example, Shopify's online platform(s) such as websites and applications and related services used: (1) to segment and classify product images (e.g., Shopify Magic and Shopify's vision-language-model); (2) to integrate with warehouses or fulfillment networks to route orders, handle returns and provide inventory updates; (3) to provide category-specific standardized return feedback data for downstream retrieval; and/or (4) to manage data associated with electronic transactions of items, for example, to receive an electronic user transaction and item operations request and initiate one or more microservices to fulfill the item operations request to initiate shipping according to a subscription, purchase or rental service (collectively, the "Accused Products"), to customers in Texas, or imported Accused Products into the United States to Texas. On information and belief, Defendant, directly or indirectly, participates in the stream of commerce that results in products, including the Accused Products, being made, used, offered for sale, and/or sold in the State of Texas and/or imported into the United States to the State of Texas, including in this District.

13. In the alternative, this Court has personal jurisdiction over Shopify Inc. under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under

federal law, Shopify Inc. is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Shopify Inc. is consistent with the United States Constitution.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and/or 1400(b). As alleged herein, Defendant has committed acts of patent infringement in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is a foreign defendant and not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

16. Accordingly, Defendant has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this District both proper and convenient for this action.

## THE ASSERTED PATENTS AND ACCUSED TECHNOLOGY

17. On September 8, 2020, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 10,769,198, entitled "Systems and Methods for Product Identification Using Image Analysis From Image Mask and Trained Neural Network," from U.S. Patent Application No. 16/783,289. A true and correct copy of the '198 Patent is available at https://patents.google.com/patent/US10769198B1/en.

18. On April 5, 2022, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,294,952, entitled "Systems and Methods for Product Identification Using Image Analysis and Trained Neural Network," from U.S. Patent Application No. 16/947,142. A true and correct copy of the '952 Patent is available at https://patents.google.com/patent/US11294952B2/en.

19. On June 7, 2022, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,354,622, entitled "Systems and Methods for Third Party Warehouse Integration," from U.S. Patent Application No. 17/533,677. A true and correct copy of the '622 Patent is available at https://patents.google.com/patent/US11354622B1/en.

20. On March 16, 2021, the U.S. Patent and Trademark Office duly and legally issued

U.S. Patent No. 10,949,861, entitled "Systems and Methods for Deriving Platform Feedback Data for Dynamic Retrieval by Downstream Subsystems," from U.S. Patent Application No. 16/385,445. A true and correct copy of the '861 Patent is available at https://patents.google.com/patent/US10949861B2/en.

21. On May 31, 2022, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 11,348,166, entitled "Systems and Methods for Analysis of Wearable Items of a Clothing Subscription Platform," from U.S. Patent Application No. 17/362,388. A true and correct copy of the '166 Patent is available at https://patents.google.com/patent/US11348166B2/en.

22. Stratopatent is the sole and exclusive owner of all right, title, and interest in and to the Asserted Patents, and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including the filing of this patent infringement action. Stratopatent also has the right to recover all damages for past, present, and future infringement of the Asserted Patents and to seek injunctive relief as appropriate under the law.

23. On information and belief, no product subject to the marking requirements of 35 U.S.C. § 287 exists. Stratopatent has not produced any product covered by the Asserted Patents that needs to be marked.

24. On information and belief, a significant portion of the operating revenue of Defendant is derived from the design, development, marketing, distribution, sale, and deployment of products, software and related services—including the Shopify platform—which are sold to, deployed for, and used by retail and/or fashion customers in the United States and this District.

25. On information and belief, Defendant designs, develops, tests, uses, markets, distributes, sells, and deploys products, software and related services—including the accused Shopify platform—which are sold to, deployed for, and used by retail and/or fashion customers in the United States and this District. Shopify's platform is designed specifically for retail and/or fashion

organizations to launch online stores and subscription models. It utilizes advanced technologies such as Artificial Intelligence (AI) and Machine Learning (ML) to automate back-end retail operations. For example, Shopify markets and sells its Shopify platform, products, software, and related services on a subscription-based model. Shopify's infringing solution is promoted, offered for sale, sold, and deployed across the United States, including directly to customers within this District, thereby directly and/or indirectly violating Stratopatent's patent rights.

26. On information and belief, Defendant imports, makes, uses, offers to sell, and/or sells within the United States and/or induces and/or contributes to the importing, making, using, offering for sale, and/or sale of the Accused Products. The Accused Products include, for example, Defendant's Shopify e-commerce platform and its associated products, applications, features, and services, including applications that Defendant hosts, promotes, provides application-programming-interface access to, and profits from through the Shopify App Store. As further examples, the Accused Products include: (a) Shopify Magic in combination with other Shopify services and/or applications that provide background-removal and product-classification features, including those that use Shopify's Standard Product Taxonomy; (b) Shopify Fulfillment Network and Shopify's third-party-logistics (3PL) management and fulfillment-orders functionality; (c) Shopify's native self-serve returns, category-specific return reasons, and/or Shopify's Admin GraphQL return APIs, together with Shopify Subscriptions; (d) Shopify's functionality to manage data associated with electronic transactions of items; and (e) applications created, owned, hosted, and/or promoted by Defendant.

27. On information and belief, Defendant hosts, promotes, recommends, provides technical support and application-programming-interface access to, and derives revenue from the applications identified above, and encourages Shopify merchants and their customers to use the Accused Products in the manner alleged herein. On information and belief, the Accused Products

have no substantial non-infringing uses with respect to the methods claimed in the Asserted Patents.

28. The evidence below describes the operation of Defendant's products and provides additional context for Defendant's infringement of the Asserted Patents, including for example the '198 Patent and the '952 Patent, which are respectively directed to, *inter alia*, a computer-implemented method using one or more processors to perform image segmentation using an image segmentation neural network and identifying a product in an image using an image-classification neural network.

29. As illustrated below and on information and belief, such image segmentation and image-based product identification is performed by Accused Products, including but not limited to, those that use Shopify Magic's artificial-intelligence background-removal feature, Shopify's image-segmentation and vision-language classification models, and/or Shopify's Standard Product Taxonomy.

30. Shopify's Accused Products acquire and process query images (e.g., product images) that have not yet been identified. For example, when a merchant adds a new product, Shopify receives a query image of a not-yet-categorized product.

> # Creating products using Shopify's Standard Product Taxonomy
>
> When you create a new product in Shopify, by default, it automatically leverages our new taxonomy. Let's walk through an example to see how this works.
>
> After clicking "Add product" on the Products page in Shopify admin, you'll enter a name, description, and add the images that you'd like to highlight on your product details page. And this is where AI works hand-in-hand with our taxonomy to help you classify and store the most important, relevant data on your product.

*See Introducing Shopify's Standard Product Taxonomy,* SHOPIFY,

https://www.shopify.com/blog/shopify-taxonomy (last visited Sep. 9, 2026).

31. Shopify uses Accused Products (e.g., Shopify Magic) and/or the steps performed by Shopify via one or more of the Accused Products to classify previously unidentified products in images (e.g., using the Shopify Standard Product Taxonomy):

> With the help of **Shopify Magic**, our algorithms can now use your product name, description and images to suggest your product category, which you can see in the Category card directly below your product images.
>
> You can automatically use the magic-selected category, or you can refine the category (and remember, you want it to be as specific as possible to ensure you have the most accurate associated product attributes), Shopify's Standard Product Taxonomy surfaces your list of default associated product attributes that come with your product category. You can see them listed in the Category metafields card (Category metafields is how we refer to product attributes in Shopify admin).

*See id.*

32. Furthermore, Shopify Magic and/or other Accused Products include a background removal feature that segments product images by removing backgrounds to obtain a mask image of the product.

> ## Let Shopify Magic edit photos for you
>
> Make your product photos instantly more professional with Shopify Magic, your AI sidekick. Transform product image by automatically removing, replacing, or generating new backgrounds, making it easier and faster to run your business.
>
> **Try Shopify Magic today**

*See 11 Best Free Background Removal Tools,* SHOPIFY, https://www.shopify.com/blog/194970057-remove-background-product-photography-image (last visited Aug. 28, 2026) (emphasis added)

(instructing users "To remove a background, click 'Remove background' in the media editor, and Shopify Magic will quickly remove everything except your main product.")

33. Shopify's vision-language models analyze an image of a product to identify and categorize the product within the Standard Product Taxonomy, including for products not previously seen.

> Vision Language Models complement this taxonomy by providing several breakthrough capabilities:
>
> - True Multi-Modal Understanding: Unlike previous systems that processed images and text separately, Vision Language Models can understand the intricate relationships between visual and textual product information.
> - Zero-Shot Learning: In addition, they can understand and classify products they've never seen before by leveraging their broad knowledge.

*See Evolution of Product Classification at Shopify: From Categories to Comprehensive Product Understanding*, SHOPIFY, https://shopify.engineering/evolution-product-classification (last visited Aug. 28, 2026) (product identification/categorization).

34. Shopify Magic isolates the product from its background, generating a foreground/mask representation of the product depicted in the image.

> To remove a background, click "Remove background" in the media editor, and Shopify Magic will quickly remove everything except your main product. If the AI misses some parts (like see-through packaging or thin jewelry chains), you can adjust the subject selection and remove the sections.

*See 11 Best Free Background Removal Tools,* SHOPIFY, https://www.shopify.com/blog/194970057-remove-background-product-photography-image (last visited Aug. 28, 2026) (emphasis added).

35. On information and belief, Shopify's background-removal capability is performed by

a trained image-segmentation model that removes background portions of a product image.

> **Shopify Magic** is Shopify's native suite of generative-AI tools that sit directly inside the admin. In addition to writing product descriptions and marketing copy, Shopify Magic now powers a media editor that empowers merchants to enhance photos without leaving Shopify or paying for extra apps.

*See id.* (emphasis added).

36. Shopify's Accused Products further process images (including, for example, images for which backgrounds have been removed) to identify them with respect to their classification in Shopify's Standard Product Taxonomy.

> ## Creating products using Shopify's Standard Product Taxonomy
>
> When you create a new product in Shopify, by default, it automatically leverages our new taxonomy. Let's walk through an example to see how this works.

*See Introducing Shopify's Standard Product Taxonomy,* SHOPIFY, https://www.shopify.com/blog/shopify-taxonomy (last visited Sep. 9, 2026).

37. "After clicking 'Add product' on the Products page in Shopify admin," a user will "enter a name, description, and add the images that" the user would "like to highlight on [the user's] product details page." *See id.* According to Shopify, "this is where AI works hand-in-hand with [Shopify's] taxonomy to help [the user] classify and store the most important, relevant data on [the user's] product." *See id.*

38. On information and belief, Shopify's image segmentation and image classification is

performed via Shopify's image segmentation neural network (e.g., based on a first set of images and first set of labels) and Shopify's image classification neural network (e.g., based on a second set of predetermined images and a second set of labels). For example, Shopify deploys vision-language models that classify products into the Standard Product Taxonomy.

> Vision Language Models complement this taxonomy by providing several breakthrough capabilities:
>
> - True Multi-Modal Understanding: Unlike previous systems that processed images and text separately, Vision Language Models can understand the intricate relationships between visual and textual product information.
> - Zero-Shot Learning: In addition, they can understand and classify products they've never seen before by leveraging their broad knowledge.
> - Natural Language Reasoning: These models can process and generate human-like descriptions, enabling them to extract rich metadata from complex product listings.
> - Contextual Understanding: They also excel at understanding products in context, considering not just what an item is, but also its intended use, style, and characteristics.
>
> Together, these technologies enable us to automatically classify products within our taxonomy while extracting relevant attributes and generating consistent product descriptions.

*See Evolution of Product Classification at Shopify: From Categories to Comprehensive Product Understanding*, SHOPIFY, https://shopify.engineering/evolution-product-classification (last visited Aug. 28, 2026) (product identification/categorization) (emphasis added).

39. Additionally, on information and belief, Shopify trains its product-classification

models on large sets of product images associated with Shopify's Standard Product Taxonomy to supply classification labels (e.g., more than 10,000 categories and 1,000+ attributes) associated with the training images.

> **Current Generation**
>
> Our current product understanding system is built on two key foundations: Shopify's Standard Product Taxonomy and Vision Language Models.
>
> The Shopify Product Taxonomy is a comprehensive library of product data spanning more than 26 business verticals, mapping over 10,000 product categories with over 1,000 associated product attributes. It offers:
>
> - Hierarchical Classification: Products are mapped to specific categories within a detailed hierarchy (e.g., Furniture > Chairs > Kitchen & Dining Room Chairs).
> - Category-Specific Attributes: Each category has its own set of relevant attributes, ensuring comprehensive product description.
> - Standardized Values: Pre-defined attribute values help maintain consistency while allowing customization.

*See id.* (emphasis added)*; see also Using Rich Image and Text Data To Categorize Products*, SHOPIFY, https://shopify.engineering/using-rich-image-text-data-categorize-products (last visited Aug. 27, 2026) (under the heading "Model Training," stating "One of the benefits of Shopify's scale is the availability of large datasets to build great data products that benefit our merchants and their buyers. For product categorization, we have collected hundreds of millions of observations to learn from.").

40. The evidence below describes the operation of Defendant's products and provides additional context for Defendant's infringement of the Asserted Patents, including for example the

’622 Patent, which is directed to, *inter alia*, a computer-implemented method for communicating between an internal server system and an external warehouse system for a plurality of articles.

41. As illustrated below and on information and belief, such a method for communicating is performed by Shopify’s Accused Products, including, for example, those providing functionality related to the Shopify Fulfillment Network, Shopify’s third-party-logistics (3PL) integration and order fulfillment, and/or Shopify’s functionality to manage data associated with electronic transactions of items.

42. Shopify’s platform is integrated with Shopify Fulfillment Network and has an internal server system that communicates with an external warehouse system (e.g., third-party 3PL fulfillment warehouses).

> Find a fulfillment partner
>
> Shopify Fulfillment Network connects you with trusted 3PL partners—all integrated into your Shopify admin. Compare capabilities, monitor performance, and manage fulfillment without switching systems. Free to install.

*See Third-Party Logistics (3PL): What It Is and How It Works*, SHOPIFY, https://www.shopify.com/enterprise/blog/third-party-logistics-3pl (last visited Sep. 3, 2026) (showing internal–external warehouse communication) (emphasis added).

> Is Shopify Fulfillment Network the same as using a traditional 3PL?
>
> Not exactly. Shopify Fulfillment Network isn't a 3PL itself; it's the app that connects your store to one, so you can find a partner and manage the relationship from the Shopify admin instead of integrating each provider separately.

*See How to Choose 3PL Management Software (2026)*, SHOPIFY, https://www.shopify.com/enterprise/blog/3pl-management-software-ecommerce (last visited Sep. 3, 2026) (indicating Shopify Fulfillment Network is “the app that connects your store” to a 3PL)

(emphasis added).

43. Shopify receives an Inventory Snapshot Entity from the external warehouse that indicates one or more unique article identifiers that are currently available for order dropping.

- **Returns remain operationally expensive.** The National Retail Federation (NRF) says **19.3% of online sales** are returned, and 82% of consumers say free returns matter. Shopify Fulfillment Network connects you with 3PL partners that can handle reverse logistics and update quantities in Shopify's **unified inventory** record.

*See Ecommerce Fulfillment Software: Top Picks & Features (2026)*, SHOPIFY, https://www.shopify.com/blog/ecommerce-fulfillment-software (last visited Sep. 9, 2026) (noting "Shopify Fulfillment Network connects you with 3PL partners that can handle reverse logistics and update quantities in Shopify's unified inventory record.").

> The software's core job is tracking order flow: showing where each order needs to go, and flagging the issues that need attention before the order reaches the customer.
>
> These are the processes 3PL management software usually covers:
>
> - Order intake from Shopify and other sales channels
> - Order routing by location, inventory status, and fulfillment rules
> - Inventory visibility across fulfillment locations
> - Shipment tracking after a 3PL picks, packs, and ships an order
> - Returns visibility after customers send items back
> - Exception handling for delayed, split, canceled, or unfulfillable orders
>
> A 3PL's own customer portal may not cover the whole order path once you're selling across several channels, shipping from more than one location, or splitting work between outsourced partners. You still need somewhere to see inventory and tracking in one view.
>
> That's where Shopify sits, as the ecommerce admin layer. Shopify captures orders from your storefront and passes them to a 3PL or fulfillment app to route, pick, pack, and ship. You can also track inventory and returns across connected sales channels and partners from the admin.

*See How to Choose 3PL Management Software (2026)*, SHOPIFY, https://www.shopify.com/enterprise/blog/3pl-management-software-ecommerce (last visited Sep. 3, 2026) (emphasis added) (indicating "Shopify captures orders from your storefront and passes them to a 3PL or fulfilment app to route, pick, pack, and ship. You can also track inventory and returns … from the admin").

44. On information and belief, Shopify's platform selects one or more unique article identifiers from the Inventory Snapshot Entity to be included in an Order Entity along with a corresponding unique article identifier information including an external warehouse unique identifier (e.g., for a 3PL warehouse that will receive an order).

## How 3PLs integrate with Shopify stores

A 3PL connects to a Shopify store through one of two paths: a pre-built app, like the Shopify Fulfillment Network app, or an approved third-party app built by an individual 3PL provider, such as ShipBob.

The Shopify Fulfillment Network app requires no technical integration. Shopify sets up the connection on the merchant's behalf, linking the 3PL directly to the Shopify admin.

Once connected, an order placed on a Shopify store sends its details automatically to the 3PL's system, which triggers picking, packing, and shipping without manual data entry.

Many approved 3PL apps can act on a store's behalf inside Shopify: marking orders as fulfilled, processing refunds, and updating stock counts as inventory moves through the warehouse.

*See Third-Party Logistics (3PL): What It Is and How It Works*, SHOPIFY, https://www.shopify.com/enterprise/blog/third-party-logistics-3pl (last visited Sep. 3, 2026) (emphasis added).

45. Shopify drops the Order Entity to the external warehouse system that is to select and prepare the corresponding article or articles for shipment. *See id.*

46. Shopify receives a Return Entity from the external warehouse system (for example, if an article is returned) indicating that the external warehouse has received a returned article and updates its article databases accordingly. On information and belief, the Return Entity includes the one or more unique article identifiers corresponding to at least one article and an external warehouse unique return identifier. Additionally, in response to receiving the Return Entity, Shopify updates one or more article databases to indicate receiving one or more articles corresponding to the one or more unique article identifiers. Furthermore, each required step of the method is accomplished via Shopify's internal server system.

- **Returns remain operationally expensive.** The National Retail Federation (NRF) says **19.3% of online sales** are returned, and 82% of consumers say free returns matter. Shopify Fulfillment Network connects you with 3PL partners that can handle reverse logistics and update quantities in Shopify's **unified inventory** record.

*See Ecommerce Fulfillment Software: Top Picks & Features (2026)*, SHOPIFY, https://www.shopify.com/blog/ecommerce-fulfillment-software (last visited Sep. 9, 2026) (noting "Shopify Fulfillment Network connects you with 3PL partners that can handle reverse logistics and update quantities in Shopify's unified inventory record.").






*See Shopify Fulfillment Network*, SHOPIFY, https://www.shopify.com/fulfillment (last visited Sep. 3, 2026) (listing benefits of the Shopify Fulfillment Network app).

47. The evidence below describes the operation of Defendant's products and provides additional context for Defendant's infringement of the Asserted Patents, including for example the '861 Patent, which are respectively directed to, *inter alia*, a computer-implemented method for generating platform feedback data from raw feedback data for dynamic retrieval by downstream subsystems of a subscription electronic transactions platform.

48. As illustrated below and on information and belief, Shopify's Accused Products, including Shopify's platform, Shopify Subscriptions, Shopify's native self-serve returns and category-specific return reasons, and/or Shopify's Admin GraphQL return APIs, perform such feedback generation.

49. Shopify provides a subscription electronic transactions platform to which merchants can subscribe to operate stores. Additionally, Shopify provides Shopify Subscriptions for merchants to obtain recurring revenue.

SUBSCRIPTIONS ON SHOPIFY

# Keep cash flowing and loyalty growing with subscriptions

Create reliable recurring revenue and build customer loyalty—all with subscription apps built on the commerce platform trusted by millions of businesses.

***

# Start selling subscriptions on Shopify

### 1. Sign up for Shopify

Start your 3-day trial today. No credit card required.

### 2. Create your online store

Quickly create and customize your storefront with themes that fit your brand and business.

### 3. Add a subscription app

For simple subscription offerings try the free Shopify Subscriptions app or explore a collection of Shopify's world-class subscriptions apps for more advanced needs.

**Download Shopify Subscriptions**

*See Shopify Subscriptions*, SHOPIFY, https://www.shopify.com/subscriptions (last visited Aug. 28, 2026) (subscription electronic transactions platform).

50. Shopify's platform detects a return notification trigger of a user for one or more wearable items physically shipped to the user in response to one or more electronic transactions of

the subscription electronic transactions platform. For example, a customer initiates a return of a physically shipped item through Shopify's self-serve returns, triggering the return flow.

> **Self-serve returns and cancellations**
>
> You can let customers submit return and cancellation requests directly from their order status page without contacting you. Self-serve returns and cancellations reduce the time you spend processing requests and give customers a convenient way to manage their orders on their own. Customers can request to return items that have been delivered, or cancel items that haven't shipped yet, from the same order status page.
>
> When a customer submits a request, you receive a notification and can review the request in your Shopify admin. You can approve or decline the request based on your policies. When you approve a return, you can add exchange items, provide shipping instructions, and send return labels to the customer. To resolve a cancellation request, you remove the requested items through the standard refund flow, or you decline the request.

*See Self-Serve Returns and Cancellations*, SHOPIFY, https://help.shopify.com/en/manual/fulfillment/managing-orders/returns/self-serve-returns (last visited Aug. 28, 2026) (return notification trigger) (emphasis added).

51. On information and belief, in response to detecting the return notification trigger, Shopify's platform identifies segment data associated with at least one of the user and the one or more wearable items shipped to the user. Further, Shopify's platform determines a return notification form identifier based on the segment data that uniquely identifies an electronic return notification form to be filled out by the user. Moreover, Shopify's platform transmits the electronic return notification form corresponding to the return notification form identifier for display at one or more user interfaces of a user device of the user. For example, Shopify presents category-specific return reasons determined by the product being returned, powered by Shopify's Standard Product Taxonomy.

> When processing returns, you'll now see suggested return reasons that are specific to the product being returned. Instead of generic options, you'll get relevant choices for each product category—like "Too big" or "Too small" for apparel, or "Taste," "Style," and "Weight" for items where those attributes matter.

*See Better Insights with Category-Specific Return Reasons*, SHOPIFY, https://changelog.shopify.com/posts/enhanced-return-reasons (last visited Aug. 28, 2026) (category-specific return reasons) (emphasis added).

52. The set of return reasons presented to a user is determined by product category, yielding a category-specific electronic return form for the user. This category-specific electronic return form is available everywhere returns can be processed on the Shopify platform, including, for example, the forms used by customers to process returns via Shopify self-serve returns.

> These suggestions are powered by Shopify's Standard Product Taxonomy and are available everywhere you process returns:
> - Shopify admin
> - Point of Sale (POS)
> - Shopify self-serve returns
> - The Shop app

*See id.* (emphasis added).

53. Shopify's platform receives via the electronic return notification form, raw feedback data from the user device relating to the one or more wearable items shipped to the user. Shopify's platform also converts the raw feedback data into platform feedback data having a format that is standardized across the subscription electronic transactions platform by parsing the raw feedback data into one or more attributes and deriving the platform feedback data having the format that is standardized across the subscription electronic transactions platform based on the one or more attributes using one or more predefined mappings between the raw feedback data and the platform feedback data. Further, on information and belief, the one or more predefined mappings comprise: (i) a first map that matches the return notification form identifier to a platform form identifier (e.g., a form with the specific, potential reasons for return shown to a user in the user's language that are mapped to standard reasons for return), (ii) a second map that matches one or more return notification form question identifiers to one or more platform question identifiers that are unique across a

plurality of return notification forms associated with a plurality of return notification form identifiers (e.g., an identifier for a form for a specific product type that asks about and/or suggests specific, potential reasons for return shown to the user in the user's language that are mapped to standard reasons for return), and (iii) a third map that matches one or more return notification form answer identifiers to one or more platform answer identifiers that are unique across the plurality of return notification forms associated with a plurality of return notification form identifiers (e.g., an identifier corresponding to the specific reason for return selected by the user in the user's language and/or freely typed user comments that are mapped to standard reasons for return). For example, Shopify standardizes return-reason data through the ReturnReasonDefinition, with an id, handle, and name for feedback data.

## Queries

`returnReasonDefinitions` · query

Returns the full library of available return reason definitions. Use this query to retrieve the standardized return reasons available for creating returns. Filter by IDs or handles to get specific definitions. Only non-deleted reasons should be shown to customers when creating new returns. Deleted reasons have been replaced with better alternatives and are no longer recommended. However, they remain valid options and may still appear on existing returns.

*See* *ReturnReasonDefinition*, SHOPIFY, https://shopify.dev/docs/api/admin-graphql/latest/objects/ReturnReasonDefinition (last visited Aug. 28, 2026) (standardized return data stored and able to be queried for retrieval by downstream subsystems) (emphasis added).

# ReturnReasonDefinition object

Install AI Toolkit Ask about this page Copy MD

Requires `read_returns` access scope.

A standardized reason for returning an item.

- Shopify offers an expanded library of return reasons available to all merchants
- For each product, Shopify suggests a curated subset of reasons based on the product's category
- Suggested reasons aren't the only valid options. When creating a return via the API, you can use any reason from the full library.

## Fields

**deleted** · Boolean! non-null

Whether the return reason has been removed from taxonomy. Deleted reasons should not be presented to customers when creating new returns, but may still appear on existing returns that were created before the reason was deleted. This field enables graceful deprecation of return reasons without breaking historical data.

**handle** · String! non-null

A unique, human-readable, stable identifier for the return reason. Example values include "arrived-late", "comfort", "too-tight", "color-too-bright", and "quality". The handle remains consistent across API versions and localizations, making it suitable for programmatic use.

**id** · ID! non-null

A globally-unique ID.

**name** · String! non-null

The localized, user-facing name of the return reason. This field returns the reason name in the requested locale, automatically falling back to English if no translation is available. Use this field when displaying return reasons to customers or merchants.

*See id.* (standardized return-reason mappings) (emphasis added).

54. Shopify stores the platform feedback data in at least one of a feedback service component and a return notification service component, in one or more formats configured for retrieval by one or more downstream subsystems associated with managing and/or analyzing the one

or more wearable items across the subscription electronic transactions platform. For example, on information and belief, Shopify provides at least one of a feedback service component and a return notification service component, including but not limited to those that are used to notify a merchant of a return request and/or enable the merchant to review, decline and/or approve the request. Via one or more of these or other feedback service and/or return notification components, Shopify stores platform feedback data in one or more formats configured for retrieval (e.g., via API or otherwise) by one or more downstream subsystems associated with managing and/or analyzing the one or more wearable items across the subscription electronic transactions platform (e.g., the Shopify platform or related applications and functions). Further, Shopify stores standardized return feedback data that can be queried by downstream subsystems through at least one of Shopify's APIs.




***




***

```
      # The return line items list to be handled.
      returnLineItems: [
        {
          # The ID of the related fulfillment line item to return.
          fulfillmentLineItemId: "gid://shopify/FulfillmentLineItem/1",
          # The quantity of the item to return.
          quantity: 1,
          # The reason to return the item.
          returnReason: UNKNOWN,
          # A message from the customer about the item to return.
          customerNote: "I accidentally bought this."
```

*See Build for return management*, SHOPIFY, https://shopify.dev/docs/apps/build/orders-fulfillment/returns-apps/build-return-management#step-5-retrieve-a-return (last visited Aug. 28, 2026) (indicating that queryable data includes at least the order ID for a return, IDs for specific items to return, standardized return-reasons, and a message from the customer about the item to return) (emphasis added).

55. The evidence below describes the operation of Defendant's products and provides additional context for Defendant's infringement of the Asserted Patents, including for example the '166 Patent, which is directed to, *inter alia*, a computer-implemented method for dynamically managing data associated with electronic transactions of items.

56. As illustrated below and on information and belief, such a method for dynamically managing data associated with electronic transactions of items is performed by Shopify's Accused Products, including, for example, those providing functionality related to the Shopify Fulfillment Network, Shopify's third-party-logistics (3PL) integration and order fulfillment, and/or Shopify's functionality to manage data associated with electronic transactions of items. On information and belief, the Shopify platform utilizes one or more processors to perform the steps of the method to the extent required by the method.

57. Shopify's platform is integrated with Shopify Fulfillment Network and is developed for managing the data associated with electronic transactions of items.

> Find a fulfillment partner
>
> Shopify Fulfillment Network connects you with trusted 3PL partners—all integrated into your Shopify admin. Compare capabilities, monitor performance, and manage fulfillment without switching systems. Free to install.

*See Third-Party Logistics (3PL): What It Is and How It Works*, SHOPIFY, https://www.shopify.com/enterprise/blog/third-party-logistics-3pl (last visited Sep. 3, 2026) (emphasis added).

> ## What is third-party logistics?
>
> Third-party logistics is when a company outsources logistics operations—warehousing, transportation, and order fulfillment—to a specialized external provider. 3PLs handle product storage, inventory tracking, order picking and packing, carrier coordination, and order-tracking software.
>
> 3PLs offer various logistics solutions, such as:
>
> - Storing products in strategic locations
> - Tracking stock levels and product locations
> - Picking, packaging, and shipping customer orders
> - Coordinating shipments via truck, air, and sea
>
> Providing software for order tracking and inventory management

*See id*. (emphasis added).

58. Shopify receives item data describing one or more items made available for physical shipment to users via electronic transactions. For example, this item data is included among the various types of data about items received and processed by the Shopify platform.

> The software's core job is tracking order flow: showing where each order needs to go, and flagging the issues that need attention before the order reaches the customer.
>
> These are the processes 3PL management software usually covers:
>
> - Order intake from Shopify and other sales channels
> - Order routing by location, inventory status, and fulfillment rules
> - Inventory visibility across fulfillment locations
> - Shipment tracking after a 3PL picks, packs, and ships an order
> - Returns visibility after customers send items back
> - Exception handling for delayed, split, canceled, or unfulfillable orders
>
> A 3PL's own customer portal may not cover the whole order path once you're selling across several channels, shipping from more than one location, or splitting work between outsourced partners. You still need somewhere to see inventory and tracking in one view.
>
> That's where Shopify sits, as the ecommerce admin layer. Shopify captures orders from your storefront and passes them to a 3PL or fulfillment app to route, pick, pack, and ship. You can also track inventory and returns across connected sales channels and partners from the admin.

*See How to Choose 3PL Management Software (2026)*, SHOPIFY, https://www.shopify.com/enterprise/blog/3pl-management-software-ecommerce (last visited Sep. 3, 2026) (emphasis added).



*See Shopify Fulfillment Network*, SHOPIFY, https://www.shopify.com/fulfillment (last visited Sep. 3, 2026).

59. The Shopify platform hosts an electronic warehouse operations portal and/or electronic administrative portal, for example, to offer "an integrated solution for businesses looking to streamline their ecommerce logistics and scale operations."

## The Shopify Fulfillment Network

Shopify Fulfillment Network (SFN) offers an integrated solution for businesses looking to streamline their ecommerce logistics and scale operations. By partnering with Flexport, a trusted logistics provider, SFN brings advanced technology and efficiency to your fulfillment process.

Key capabilities include:

- **Fast nationwide delivery:** Two- and three-day shipping across the US
- **Data-driven network planning:** Strategic product placement based on demand
- **Simplified inventory management:** Send to one location, let Flexport handle distribution

SFN's integration with your Shopify store is seamless. You can monitor everything from fulfillment to inventory levels directly from your Shopify admin.

As your business grows and evolves, you can adapt your fulfillment strategy. Choose delivery services that fit your current needs and adjust as necessary. SFN pricing is designed to be transparent, so you can understand costs as your fulfillment needs change.

By leveraging Flexport's logistics expertise and Shopify's ecommerce know-how, SFN positions your brand for scalable, sustainable growth. The use of technology and data-driven network planning means more efficient operations, lower costs, and happier customers.

*See Third-Party Logistics (3PL): What It Is and How It Works*, SHOPIFY, https://www.shopify.com/enterprise/blog/third-party-logistics-3pl (last visited Sep. 3, 2026) (emphasis added).




*See Shopify Fulfillment Network*, SHOPIFY, https://www.shopify.com/fulfillment (last visited Sep. 3, 2026) (emphasis added).

60. Further, the Shopify platform hosts an electronic warehouse operations portal and/or electronic administrative portal that comprises user interfaces (e.g., such interfaces configured for consumers, retailers, and/or manufacturers) that are accessible via devices (e.g., point-of-sale terminals, laptops, mobile devices) over a network (e.g., the Internet).




*See Shopify*, SHOPIFY, https://www.shopify.com/ (last visited Sep. 3, 2026).

61. As illustrated, the Shopify platform receives electronic user transactions initiated at user platforms. *See id.* For example, consumers make product purchases as electronic transactions for which they are charged. *See id.*

62. Each electronic user transaction is associated with at least one unique user identifier (e.g., the individual consumer's account) and at least one unique item identifier identifying an item (e.g., the item data) to be placed in a virtual closet and rented or purchased according to a subscription, purchase, or rental service. The one or more user platforms include user interfaces (e.g., for retailers and consumers) accessible from one or more user devices over one or more networks (e.g., the Internet). For example, electronic user transactions can be initiated within the Shopify platform, where each electronic user transaction is associated with at least one unique user identifier and at least one unique item identifier identifying an item described in the received item data to be rented or purchased according to a subscription, purchase, or rental service.




*See Reach the world's best Shoppers*, SHOPIFY, https://www.shopify.com/shop (last visited Sep. 3, 2026) (emphasis added).

63. The Shopify platform receives item operations requests from at least one of the electronic warehouse operations portal and the electronic administrative portal to initiate order processing of an item identified by a unique user identifier and a unique item identifier. For example, the Shopify platform offers "an integrated solution for businesses looking to streamline their ecommerce logistics and scale operations" which brings together all of the individual components required to enable the processing of orders for unique customers to purchase unique items across platforms and fulfilling those orders.

## The Shopify Fulfillment Network

Shopify Fulfillment Network (SFN) offers an integrated solution for businesses looking to streamline their **ecommerce logistics** and scale operations. By partnering with Flexport, a trusted logistics provider, SFN brings advanced technology and efficiency to your fulfillment process.

Key capabilities include:

- **Fast nationwide delivery:** Two- and three-day shipping across the US
- **Data-driven network planning:** Strategic product placement based on demand
- **Simplified inventory management:** Send to one location, let Flexport handle distribution

SFN's integration with your Shopify store is seamless. You can monitor everything from fulfillment to inventory levels directly from your Shopify admin.

As your business grows and evolves, you can adapt your fulfillment strategy. Choose delivery services that fit your current needs and adjust as necessary. SFN pricing is designed to be transparent, so you can understand costs as your fulfillment needs change.

By leveraging Flexport's logistics expertise and Shopify's ecommerce know-how, SFN positions your brand for scalable, sustainable growth. The use of technology and data-driven network planning means more efficient operations, lower costs, and happier customers.

*See Third-Party Logistics (3PL): What It Is and How It Works*, SHOPIFY, https://www.shopify.com/enterprise/blog/third-party-logistics-3pl (last visited Sep. 3, 2026) (emphasis added).

64. The Shopify platform, in response to receiving the one or more item operations requests, initiates one or more microservices to fulfill the one or more item operations requests to initiate shipping of the item to the user at a physical address according to the subscription, purchase, or rental service.







*See Shopify Fulfillment Network*, SHOPIFY, https://www.shopify.com/fulfillment (last visited Sep. 3, 2026) (emphasis added).

## COUNT I

### (Infringement of the ’198 Patent)

65. Paragraphs 1 through 64 are incorporated by reference as if fully set forth herein.

66. Stratopatent is the owner by assignment of all right, title, and interest in the ’198 Patent, entitled “Systems and Methods for Product Identification Using Image Analysis From Image Mask and Trained Neural Network,” including the right to enforce the ’198 Patent and to recover for infringement thereof.

67. The ’198 Patent is valid, enforceable, and was duly and legally issued by the U.S. Patent and Trademark Office from U.S. Patent Application No. 16/783,289.

68. Stratopatent has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States, or import into the United States, any products or services that

embody the inventions of the ’198 Patent.

69. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the ’198 patent in this District and elsewhere in Texas and the United States.

70. Defendant has directly infringed and continues to directly infringe one or more claims of the ’198 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, products and/or services that practice each and every limitation of one or more claims of the ’198 Patent. Such products and/or services include one or more of the Accused Products and/or the steps performed by Shopify via one or more of the Accused Products, for example, Shopify’s and/or Shopify Magic’s background-removal, segmentation model, vision-language model, and/or product-classification features.

71. For example, on information and belief, one or more of the Accused Products perform a computer-implemented method.

72. On information and belief, one or more of the Accused Products perform the step of obtaining, by one or more processors, a first set of images, wherein each of the first set of images depicts a product.

73. On information and belief, one or more of the Accused Products perform the step of obtaining, by the one or more processors, a first set of labels associated with the first set of images, wherein each of the first set of labels corresponds to an image in the first set of images and includes information indicating a mask of the product depicted in the corresponding image.

74. On information and belief, one or more of the Accused Products perform the step of training, by the one or more processors, an image segmentation neural network based on the first set of images and the first set of labels.

75. On information and belief, one or more of the Accused Products perform the step of obtaining, by the one or more processors, a second set of images, wherein each of the second set of images depicts a known product.

76. On information and belief, one or more of the Accused Products perform the step of obtaining, by the one or more processors, a second set of labels associated with the second set of images, wherein each of the second set of labels corresponds to an image in the second set of images and includes information indicating classification information for the known product depicted in the corresponding image.

77. On information and belief, one or more of the Accused Products perform the step of training, by the one or more processors, an image classification neural network based on the second set of predetermined images and the second set of labels.

78. On information and belief, one or more of the Accused Products perform the step of receiving, by the one or more processors, a query image depicting a product that is not yet identified.

79. On information and belief, one or more of the Accused Products perform the step of performing, by the one or more processors, image segmentation of the query image using the image segmentation neural network, wherein performing image segmentation of the query image includes removing background image portions of the query image, thereby obtaining a mask image of the product depicted in the query image.

80. On information and belief, one or more of the Accused Products perform the step of identifying the product in the image by performing, by the one or more processors, image analysis of the mask image of the product depicted in the query image using the image classification neural network.

81. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’198 Patent, including at least claim 1, by contributorily enabling and knowingly and

intentionally inducing others, including users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products.

82. Upon and since the date of service of Plaintiff's original Complaint for Patent Infringement, Defendant knowingly and intentionally has induced and continues to induce infringement of one or more claims of the '198 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one or more of the Accused Products.

83. Upon and since the date of service of the original Complaint for Patent Infringement, on information and belief, with knowledge and intent, or with willful blindness, Defendant has encouraged and is encouraging and facilitating infringement of one or more claims of the '198 Patent by others, including at least claim 1. For example, on information and belief, Defendant sells or otherwise provides products and services, including but not limited to Defendant's Shopify platform and related websites, applications and/or services, to entities, for example, users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, knowing that these entities intend to import, distribute, make, use, market, offer to sell, and/or sell the products within the United States.

84. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant, with knowledge that these products and services, or the use thereof, infringe one or more claims of the '198 Patent, including at least claim 1, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of

the ’198 Patent by supplying these products and services to end users for use in an infringing manner.

85. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant has induced and continues to induce infringement by others of one or more claims of the ’198 Patent, including at least claim 1, including users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’198 Patent, but while remaining willfully blind to the infringement.

86. On information and belief, upon and since the date of service of Plaintiff’s original Complaint for Patent Infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers that make, import, distribute, purchase, offer for sale, sell, and/or use the Accused Products that include or are made using all of the limitations of one or more claims of the ’198 Patent to directly infringe one or more claims of the ’198 Patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since service of Plaintiff’s original Complaint for Patent Infringement, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’198 Patent. On information and belief, Defendant intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers through at least, *inter alia*, the following activities: creating marketing materials or advertisements that promote the infringing use of the Accused Products; creating and/or

maintaining established distribution channels for the Accused Products into and within the United States, specifically so that consumers may be induced to purchase and use the Accused Products; distributing or making available specifications, instructions, or manuals for these products to consumers, installers, purchasers and/or prospective buyers; testing and/or certifying processes in connection with infringement of the Accused Products; and/or providing technical support, product files, videos, and/or services for these products to purchasers in the United States.

87. On information and belief, upon and since the date of service of Stratopatent's Complaint for Patent Infringement, Defendant has also contributorily infringed, and continues to contributorily infringe, one or more claims of the '198 patent under 35 U.S.C. § 271(c) by making, using, selling, offering to sell, and/or importing into the United States the software components, configuration files, and deployment packages of Shopify's platform and related applications and/or services. These components—which include specialized functionality—constitute a material part of the patented combination and process of the '198 patent.

88. On information and belief, these software components are especially made and/or especially adapted for use in an infringement of the '198 patent, and are not staple articles of commerce or commodities suitable for substantial non-infringing use. At least some components of Shopify's platform are designed and marketed exclusively to execute infringing functionality and have no commercial utility or substantial non-infringing use other than to practice the patented methods and combinations of the '198 patent.

89. Each of Defendant's infringing activities relative to the '198 Patent occurring after the filing and service of Plaintiff's original Complaint for Patent Infringement, wherein Defendant has continued its infringement with full knowledge of the '198 Patent and without a reasonable, good-faith defense, has been, and continues to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of

misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed for such post-filing willful infringement.

90. Stratopatent has been and continues to be damaged by Defendant's infringement of the '198 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

**COUNT II**

**(Infringement of the '952 Patent)**

91. Paragraphs 1 through 90 are incorporated by reference as if fully set forth herein.

92. Stratopatent is the owner by assignment of all right, title, and interest in the '952 Patent, entitled "Systems and Methods for Product Identification Using Image Analysis and Trained Neural Network," including the right to enforce the '952 Patent and to recover for infringement thereof.

93. The '952 Patent is valid, enforceable, and was duly and legally issued by the U.S. Patent and Trademark Office from U.S. Patent Application No. 16/947,142.

94. Stratopatent has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States, or import into the United States, any products or services that embody the inventions of the '952 Patent.

95. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '952 patent in this District and elsewhere in Texas and the United States.

96. Defendant has directly infringed and continues to directly infringe one or more claims of the '952 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, products and/or services

that practice each and every limitation of one or more claims of the ’952 Patent. Such products and/or services include one or more of the Accused Products and/or the steps performed by Shopify via one or more of the Accused Products, for example, Shopify’s and/or Shopify Magic’s background-removal, segmentation model, vision-language model, and/or product-classification features.

97. For example, on information and belief, one or more of the Accused Products perform a computer-implemented method.

98. On information and belief, one or more of the Accused Products perform the step of obtaining, by one or more processors, a set of images, wherein each of the set of images depicts a product.

99. On information and belief, one or more of the Accused Products perform the step of obtaining, by the one or more processors, a set of labels associated with the set of images, wherein each of the set of labels corresponds to an image in the set of images and includes information indicating a mask or classification of the product depicted in the corresponding image.

100. On information and belief, one or more of the Accused Products perform the step of training, by the one or more processors, an image segmentation neural network based on the set of images and the set of labels.

101. On information and belief, one or more of the Accused Products perform the step of receiving, by the one or more processors, a query image depicting a product that is not yet identified.

102. On information and belief, one or more of the Accused Products perform the step of performing, by the one or more processors, image segmentation of the query image using the image segmentation neural network, wherein performing image segmentation of the query image includes removing background image portions of the query image, thereby obtaining a mask image of the product depicted in the query image.

103. On information and belief, one or more of the Accused Products perform the step of

identifying the product in the image by performing, by the one or more processors, image analysis of the mask image of the product depicted in the query image using an image classification neural network.

104. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’952 Patent, including at least claim 1, by contributorily enabling and knowingly and intentionally inducing others, including users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products.

105. Upon and since the date of service of Plaintiff's original Complaint for Patent Infringement, Defendant knowingly and intentionally has induced and continues to induce infringement of one or more claims of the ’952 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one or more of the Accused Products.

106. Upon and since the date of service of the original Complaint for Patent Infringement, on information and belief, with knowledge and intent, or with willful blindness, Defendant has encouraged and is encouraging and facilitating infringement of one or more claims of the ’952 Patent by others, including at least claim 1. For example, on information and belief, Defendant sells or otherwise provides products and services, including but not limited to Defendant's Shopify platform and related websites, applications and/or services, to entities, for example, users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, knowing that these entities intend to import, distribute, make, use, market, offer to sell,

and/or sell the products within the United States.

107. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant, with knowledge that these products and services, or the use thereof, infringe one or more claims of the ’952 Patent, including at least claim 1, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’952 Patent by supplying these products and services to end users for use in an infringing manner.

108. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant has induced and continues to induce infringement by others of one or more claims of the ’952 Patent, including at least claim 1, including users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’952 Patent, but while remaining willfully blind to the infringement.

109. On information and belief, upon and since the date of service of Plaintiff’s original Complaint for Patent Infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers that make, import, distribute, purchase, offer for sale, sell, and/or use the Accused Products that include or are made using all of the limitations of one or more claims of the ’952 Patent to directly infringe one or more claims of the ’952 Patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since service of Plaintiff’s original Complaint for Patent Infringement, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’952 Patent. On information and

belief, Defendant intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers through at least, *inter alia*, the following activities: creating marketing materials or advertisements that promote the infringing use of the Accused Products; creating and/or maintaining established distribution channels for the Accused Products into and within the United States, specifically so that consumers may be induced to purchase and use the Accused Products; distributing or making available specifications, instructions, or manuals for these products to consumers, installers, purchasers and/or prospective buyers; testing and/or certifying processes in connection with infringement of the Accused Products; and/or providing technical support, product files, videos, and/or services for these products to purchasers in the United States.

110. On information and belief, upon and since the date of service of Stratopatent's Complaint for Patent Infringement, Defendant has also contributorily infringed, and continues to contributorily infringe, one or more claims of the '952 patent under 35 U.S.C. § 271(c) by making, using, selling, offering to sell, and/or importing into the United States the software components, configuration files, and deployment packages of Shopify's platform and related applications and/or services. These components—which include specialized functionality—constitute a material part of the patented combination and process of the '952 patent.

111. On information and belief, these software components are especially made and/or especially adapted for use in an infringement of the '952 patent, and are not staple articles of commerce or commodities suitable for substantial non-infringing use. At least some components of Shopify's platform are designed and marketed exclusively to execute infringing functionality and have no commercial utility or substantial non-infringing use other than to practice the patented methods and combinations of the '952 patent.

112. Each of Defendant's infringing activities relative to the '952 Patent occurring after the filing and service of Plaintiff's original Complaint for Patent Infringement, wherein Defendant has continued its infringement with full knowledge of the '952 Patent and without a reasonable, good-faith defense, has been, and continues to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed for such post-filing willful infringement.

113. Stratopatent has been and continues to be damaged by Defendant's infringement of the '952 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

**COUNT III**

**(Infringement of the '622 Patent)**

114. Paragraphs 1 through 113 are incorporated by reference as if fully set forth herein.

115. Stratopatent is the owner by assignment of all right, title, and interest in the '622 Patent, entitled "Systems and Methods for Third Party Warehouse Integration," including the right to enforce the '622 Patent and to recover for infringement thereof.

116. The '622 Patent is valid, enforceable, and was duly and legally issued by the U.S. Patent and Trademark Office from U.S. Patent Application No. 17/533,677.

117. Stratopatent has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States, or import into the United States, any products or services that embody the inventions of the '622 Patent.

118. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '622 patent in this District and elsewhere in Texas and the United States.

119. Defendant has directly infringed and continues to directly infringe one or more claims of the ’622 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, products and/or services that practice each and every limitation of one or more claims of the ’622 Patent. Such products and/or services include one or more of the Accused Products and/or the steps performed by Shopify via one or more of the Accused Products, for example, Shopify Fulfillment Network, Shopify’s third-party-logistics (3PL) management and fulfillment-orders functionality, and/or Shopify’s functionality to manage data associated with electronic transactions of items.

120. For example, on information and belief, one or more of the Accused Products perform a computer-implemented method for communicating between an internal server system and an external warehouse system for a plurality of articles.

121. On information and belief, one or more of the Accused Products perform the step of receiving, by the internal server system, an Inventory Snapshot Entity from the external warehouse system, the Inventory Snapshot Entity indicating a one or more unique article identifiers that are currently available in the external warehouse system for order dropping, wherein the one or more unique article identifiers corresponds to an article of the plurality of articles.

122. On information and belief, one or more of the Accused Products perform the step of in response to the receiving, selecting, by the internal server system, the one or more unique article identifiers from the Inventory Snapshot Entity to be included in an Order Entity, the Order Entity including the one or more unique article identifiers and a corresponding unique article identifier information for each of the one or more unique article identifiers, the corresponding unique article identifier information including an external warehouse unique identifier.

123. On information and belief, one or more of the Accused Products perform the step of

dropping, by the internal server system, the Order Entity to the external warehouse system, the external warehouse system selecting and preparing each article corresponding to the external warehouse unique identifier in the Order Entity for shipment.

124. On information and belief, one or more of the Accused Products perform the step of receiving, by the internal server system, a Return Entity from the external warehouse system indicating that the external warehouse system received the article, the Return Entity including the one or more unique article identifiers corresponding to at least one article and an external warehouse unique return identifier.

125. On information and belief, one or more of the Accused Products perform the step of in response to receiving the Return Entity, updating, by the internal server system, one or more article databases to indicate receiving one or more articles corresponding to the one or more unique article identifiers.

126. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’622 Patent, including at least claim 1, by contributorily enabling and knowingly and intentionally inducing others, including users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products.

127. Upon and since the date of service of Plaintiff’s original Complaint for Patent Infringement, Defendant knowingly and intentionally has induced and continues to induce infringement of one or more claims of the ’622 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one or more of

the Accused Products.

128. Upon and since the date of service of the original Complaint for Patent Infringement, on information and belief, with knowledge and intent, or with willful blindness, Defendant has encouraged and is encouraging and facilitating infringement of one or more claims of the '622 Patent by others, including at least claim 1. For example, on information and belief, Defendant sells or otherwise provides products and services, including but not limited to Defendant's Shopify platform and related websites, applications and/or services, to entities, for example, users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, knowing that these entities intend to import, distribute, make, use, market, offer to sell, and/or sell the products within the United States.

129. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant, with knowledge that these products and services, or the use thereof, infringe one or more claims of the '622 Patent, including at least claim 1, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '622 Patent by supplying these products and services to end users for use in an infringing manner.

130. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant has induced and continues to induce infringement by others of one or more claims of the '622 Patent, including at least claim 1, including users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '622 Patent, but while remaining willfully blind to the infringement.

131. On information and belief, upon and since the date of service of the original

Complaint for Patent Infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers that make, import, distribute, purchase, offer for sale, sell, and/or use the Accused Products that include or are made using all of the limitations of one or more claims of the ’622 Patent to directly infringe one or more claims of the ’622 Patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since service of Plaintiff’s original Complaint for Patent Infringement, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’622 Patent. On information and belief, Defendant intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers through at least, *inter alia*, the following activities: creating marketing materials or advertisements that promote the infringing use of the Accused Products; creating and/or maintaining established distribution channels for the Accused Products into and within the United States, specifically so that consumers may be induced to purchase and use the Accused Products; distributing or making available specifications, instructions, or manuals for these products to consumers, installers, purchasers and/or prospective buyers; testing and/or certifying processes in connection with infringement of the Accused Products; and/or providing technical support, product files, videos, and/or services for these products to purchasers in the United States.

132. On information and belief, upon and since the date of service of Stratopatent’s Complaint for Patent Infringement, Defendant has also contributorily infringed, and continues to contributorily infringe, one or more claims of the ’622 patent under 35 U.S.C. § 271(c) by making, using, selling, offering to sell, and/or importing into the United States the software components,

configuration files, and deployment packages of Shopify's platform and related applications and/or services. These components—which include specialized functionality—constitute a material part of the patented combination and process of the '622 patent.

133. On information and belief, these software components are especially made and/or especially adapted for use in an infringement of the '622 patent, and are not staple articles of commerce or commodities suitable for substantial non-infringing use. At least some components of Shopify's platform are designed and marketed exclusively to execute infringing functionality and have no commercial utility or substantial non-infringing use other than to practice the patented methods and combinations of the '622 patent.

134. Each of Defendant's infringing activities relative to the '622 Patent occurring after the filing and service of Plaintiff's original Complaint for Patent Infringement, wherein Defendant has continued its infringement with full knowledge of the '622 Patent and without a reasonable, good-faith defense, has been, and continues to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed for such post-filing willful infringement.

135. Stratopatent has been and continues to be damaged by Defendant's infringement of the '622 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

**COUNT IV**

**(Infringement of the '861 Patent)**

136. Paragraphs 1 through 135 are incorporated by reference as if fully set forth herein.

137. Stratopatent is the owner by assignment of all right, title, and interest in the '861

Patent, entitled “Systems and Methods for Deriving Platform Feedback Data for Dynamic Retrieval by Downstream Subsystems,” including the right to enforce the ’861 Patent and to recover for infringement thereof.

138. The ’861 Patent is valid, enforceable, and was duly and legally issued by the U.S. Patent and Trademark Office from U.S. Patent Application No. 16/385,445.

139. Stratopatent has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States, or import into the United States, any products or services that embody the inventions of the ’861 Patent.

140. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the ’861 patent in this District and elsewhere in Texas and the United States.

141. Defendant has directly infringed and continues to directly infringe one or more claims of the ’861 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, products and/or services that practice each and every limitation of one or more claims of the ’861 Patent. Such products and/or services include one or more of the Accused Products and/or the steps performed by Shopify via one or more of the Accused Products, for example, Shopify’s platform and/or features, including but not limited to native self-serve returns, category-specific return reasons, Shopify’s Admin GraphQL return APIs, and/or Shopify Subscriptions.

142. For example, on information and belief, one or more of the Accused Products perform a computer-implemented method for generating platform feedback data from raw feedback data for dynamic retrieval by downstream subsystems of a subscription electronic transactions platform.

143. On information and belief, one or more of the Accused Products perform the step of

detecting, by one or more processors, a return notification trigger of a user for one or more wearable items physically shipped to the user in response to one or more electronic transactions of the subscription electronic transactions platform.

144. On information and belief, one or more of the Accused Products perform the step of in response to detecting the return notification trigger, identifying, by the one or more processors, segment data associated with at least one of the user and the one or more wearable items shipped to the user.

145. On information and belief, one or more of the Accused Products perform the step of determining, by the one or more processors, a return notification form identifier based on the segment data, the return notification form identifier uniquely identifying an electronic return notification form to be filled out by the user.

146. On information and belief, one or more of the Accused Products perform the step of transmitting the electronic return notification form corresponding to the return notification form identifier for display at one or more user interfaces of a user device of the user.

147. On information and belief, one or more of the Accused Products perform the step of receiving, by the one or more processors, via the electronic return notification form, raw feedback data from the user device relating to the one or more wearable items shipped to the user.

148. On information and belief, one or more of the Accused Products perform the step of converting, by the one or more processors, the raw feedback data into platform feedback data having a format that is standardized across the subscription electronic transactions platform by parsing the raw feedback data into one or more attributes and deriving the platform feedback data having the format that is standardized across the subscription electronic transactions platform based on the one or more attributes using one or more predefined mappings between the raw feedback data and the platform feedback data, the one or more predefined mappings comprising (i) a first map that matches

the return notification form identifier to a platform form identifier, (ii) a second map that matches one or more return notification form question identifiers to one or more platform question identifiers that are unique across a plurality of return notification forms associated with a plurality of return notification form identifiers, and (iii) a third map that matches one or more return notification form answer identifiers to one or more platform answer identifiers that are unique across the plurality of return notification forms associated with a plurality of return notification form identifiers.

149. On information and belief, one or more of the Accused Products perform the step of storing, by the one or more processors, the platform feedback data in at least one of a feedback service component and a return notification service component, in one or more formats configured for retrieval by one or more downstream subsystems associated with managing and/or analyzing the one or more wearable items across the subscription electronic transactions platform.

150. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’861 Patent, including at least claim 1, by contributorily enabling and knowingly and intentionally inducing others, including users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products.

151. Upon and since the date of service of Plaintiff’s original Complaint for Patent Infringement, Defendant knowingly and intentionally has induced and continues to induce infringement of one or more claims of the ’861 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one or more of the Accused Products.

152. Upon and since the date of service of the original Complaint for Patent Infringement, on information and belief, with knowledge and intent, or with willful blindness, Defendant has encouraged and is encouraging and facilitating infringement of one or more claims of the ’861 Patent by others, including at least claim 1. For example, on information and belief, Defendant sells or otherwise provides products and services, including but not limited to Defendant’s Shopify platform and related websites, applications and/or services, to entities, for example, users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, knowing that these entities intend to import, distribute, make, use, market, offer to sell, and/or sell the products within the United States.

153. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant, with knowledge that these products and services, or the use thereof, infringe one or more claims of the ’861 Patent, including at least claim 1, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the ’861 Patent by supplying these products and services to end users for use in an infringing manner.

154. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant has induced and continues to induce infringement by others of one or more claims of the ’861 Patent, including at least claim 1, including users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’861 Patent, but while remaining willfully blind to the infringement.

155. On information and belief, upon and since the date of service of Plaintiff’s original Complaint for Patent Infringement, Defendant has actively induced, under 35 U.S.C. § 271(b),

importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers that make, import, distribute, purchase, offer for sale, sell, and/or use the Accused Products that include or are made using all of the limitations of one or more claims of the ’861 Patent to directly infringe one or more claims of the ’861 Patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since service of Plaintiff’s original Complaint for Patent Infringement, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the ’861 Patent. On information and belief, Defendant intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers through at least, *inter alia*, the following activities: creating marketing materials or advertisements that promote the infringing use of the Accused Products; creating and/or maintaining established distribution channels for the Accused Products into and within the United States, specifically so that consumers may be induced to purchase and use the Accused Products; distributing or making available specifications, instructions, or manuals for these products to consumers, installers, purchasers and/or prospective buyers; testing and/or certifying processes in connection with infringement of the Accused Products; and/or providing technical support, product files, videos, and/or services for these products to purchasers in the United States.

156. On information and belief, upon and since the date of service of Stratopatent’s Complaint for Patent Infringement, Defendant has also contributorily infringed, and continues to contributorily infringe, one or more claims of the ’861 patent under 35 U.S.C. § 271(c) by making, using, selling, offering to sell, and/or importing into the United States the software components, configuration files, and deployment packages of Shopify’s platform and related applications

and/or services. These components—which include specialized functionality—constitute a material part of the patented combination and process of the ’861 patent.

157. On information and belief, these software components are especially made and/or especially adapted for use in an infringement of the ’861 patent, and are not staple articles of commerce or commodities suitable for substantial non-infringing use. At least some components of Shopify’s platform are designed and marketed exclusively to execute infringing functionality and have no commercial utility or substantial non-infringing use other than to practice the patented methods and combinations of the ’861 patent.

158. Each of Defendant’s infringing activities relative to the ’861 Patent occurring after the filing and service of Plaintiff’s original Complaint for Patent Infringement, wherein Defendant has continued its infringement with full knowledge of the ’861 Patent and without a reasonable, good-faith defense, has been, and continues to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed for such post-filing willful infringement.

159. Stratopatent has been and continues to be damaged by Defendant’s infringement of the ’861 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

## <u>COUNT V</u>

### (Infringement of the ’166 Patent)

160. Paragraphs 1 through 159 are incorporated by reference as if fully set forth herein.

161. Stratopatent is the owner by assignment of all right, title, and interest in the ’166 Patent, entitled “Systems and Methods for Analysis of Wearable Items of a Clothing Subscription

Platform," including the right to enforce the '166 Patent and to recover for infringement thereof.

162. The '166 Patent is valid, enforceable, and was duly and legally issued by the U.S. Patent and Trademark Office from U.S. Patent Application No. 17/362,388.

163. Stratopatent has not licensed or otherwise authorized Defendant to make, use, offer to sell, or sell within the United States, or import into the United States, any products or services that embody the inventions of the '166 Patent.

164. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '166 patent in this District and elsewhere in Texas and the United States.

165. Defendant has directly infringed and continues to directly infringe one or more claims of the '166 Patent, including at least claim 1, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, products and/or services that practice each and every limitation of one or more claims of the '166 Patent. Such products and/or services include one or more of the Accused Products and/or the steps performed by Shopify via one or more of the Accused Products, for example, Shopify Fulfillment Network, Shopify's third-party-logistics (3PL) management and fulfillment-orders functionality, and/or Shopify's functionality to manage data associated with electronic transactions of items.

166. For example, on information and belief, one or more of the Accused Products perform a computer-implemented method for dynamically managing data associated with electronic transactions of items.

167. On information and belief, one or more of the Accused Products perform the step of receiving, by one or more processors, item data describing one or more items made available for physical shipment to users via electronic transactions.

168. On information and belief, one or more of the Accused Products perform the step of hosting, by the one or more processors, an electronic warehouse operations portal and/or an electronic administrative portal comprising user interfaces accessible from one or more devices over one or more networks.

169. On information and belief, one or more of the Accused Products perform the step of receiving, by the one or more processors, one or more electronic user transactions initiated at one or more user platforms, each of the one or more electronic user transactions associated with at least one unique user identifier and at least one unique item identifier identifying an item described in the received item data to be placed in a virtual closet and rented or purchased according to a subscription, purchase, or rental service, wherein the one or more user platforms comprise one or more user interfaces accessible from one or more user devices over the one or more networks.

170. On information and belief, one or more of the Accused Products perform the step of receiving, by the one or more processors, one or more item operations requests from at least one of the electronic warehouse operations portal and the electronic administrative portal to initiate order processing of the item identified by the at least one unique user identifier and the at least one unique item identifier for a user identified by the at least one unique user identifier.

171. On information and belief, one or more of the Accused Products perform the step of in response to receiving the one or more item operations requests, initiating one or more microservices to fulfill the one or more item operations requests to initiate shipping of the item to the user at a physical address according to the subscription, purchase, or rental service.

172. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the ’166 Patent, including at least claim 1, by contributorily enabling and knowingly and intentionally inducing others, including users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, to directly infringe, either literally or under the doctrine

of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology, including the Accused Products.

173. Upon and since the date of service of Plaintiff's original Complaint for Patent Infringement, Defendant knowingly and intentionally has induced and continues to induce infringement of one or more claims of the '166 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products, including one or more of the Accused Products.

174. Upon and since the date of service of the original Complaint for Patent Infringement, on information and belief, with knowledge and intent, or with willful blindness, Defendant has encouraged and is encouraging and facilitating infringement of one or more claims of the '166 Patent by others, including at least claim 1. For example, on information and belief, Defendant sells or otherwise provides products and services, including but not limited to Defendant's Shopify platform and related websites, applications and/or services, to entities, for example, users, merchants, customers, representatives, agents, distributors, installers, and/or salespeople, knowing that these entities intend to import, distribute, make, use, market, offer to sell, and/or sell the products within the United States.

175. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant, with knowledge that these products and services, or the use thereof, infringe one or more claims of the '166 Patent, including at least claim 1, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '166 Patent by supplying these products and services to end users for use in an infringing manner.

176. Upon and since the date of service of the original Complaint for Patent Infringement, Defendant has induced and continues to induce infringement by others of one or more claims of the '166 Patent, including at least claim 1, including users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '166 Patent, but while remaining willfully blind to the infringement.

177. On information and belief, upon and since the date of service of the original Complaint for Patent Infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers that make, import, distribute, purchase, offer for sale, sell, and/or use the Accused Products that include or are made using all of the limitations of one or more claims of the '166 Patent to directly infringe one or more claims of the '166 Patent by making, using, offering for sale, selling, and/or importing the Accused Products. Since service of Plaintiff's original Complaint for Patent Infringement, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '166 Patent. On information and belief, Defendant intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, users, merchants, customers, representatives, agents, distributors, installers, and/or sales entities, and/or related service providers through at least, *inter alia*, the following activities: creating marketing materials or advertisements that promote the infringing use of the Accused Products; creating and/or maintaining established distribution channels for the Accused Products into and within the United States, specifically so that consumers may be induced to purchase and use the Accused Products;

distributing or making available specifications, instructions, or manuals for these products to consumers, installers, purchasers and/or prospective buyers; testing and/or certifying processes in connection with infringement of the Accused Products; and/or providing technical support, product files, videos, and/or services for these products to purchasers in the United States.

178. On information and belief, upon and since the date of service of Stratopatent's Complaint for Patent Infringement, Defendant has also contributorily infringed, and continues to contributorily infringe, one or more claims of the '166 patent under 35 U.S.C. § 271(c) by making, using, selling, offering to sell, and/or importing into the United States the software components, configuration files, and deployment packages of Shopify's platform and related applications and/or services. These components—which include specialized functionality—constitute a material part of the patented combination and process of the '166 patent.

179. On information and belief, these software components are especially made and/or especially adapted for use in an infringement of the '166 patent, and are not staple articles of commerce or commodities suitable for substantial non-infringing use. At least some components of Shopify's platform are designed and marketed exclusively to execute infringing functionality and have no commercial utility or substantial non-infringing use other than to practice the patented methods and combinations of the '166 patent.

180. Each of Defendant's infringing activities relative to the '166 Patent occurring after the filing and service of Plaintiff's original Complaint for Patent Infringement, wherein Defendant has continued its infringement with full knowledge of the '166 Patent and without a reasonable, good-faith defense, has been, and continues to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed for such post-filing willful

infringement.

181. Stratopatent has been and continues to be damaged by Defendant's infringement of the '166 Patent and is entitled to recover damages adequate to compensate for that infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

## JURY DEMAND

182. Stratopatent hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Stratopatent prays for relief against Defendant as follows:

a. entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Asserted Patents;

b. a full accounting for and an award of damages to Stratopatent for Defendant's infringement of the Asserted Patents, but in no event less than a reasonable royalty, including enhanced damages pursuant to 35 U.S.C. § 284, together with pre- and post-judgment interest;

c. entry of judgment declaring that this case is exceptional and awarding Stratopatent its costs and reasonable attorney fees under 35 U.S.C. § 285; and

d. such other and further relief as the Court deems just and proper.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Terry A. Saad* __

Terry A. Saad (lead attorney)
Texas Bar No. 24066015
E-mail: tsaad@bosfirm.com
Jeffrey R. Bragalone
Texas Bar No. 02855775
E-mail: jbragalone@bosfirm.com
Marcus Benavides
Texas Bar No. 24035574
E-mail: mbenavides@bosfirm.com
Brandon V. Zuniga
Texas Bar No. 24088720
E-mail: bzuniga@bosfirm.com
Mark M.R. Douglass
Texas Bar No. 24131184
E-mail: mdouglass@bosfirm.com
**BRAGALONE OLEJKO SAAD PC**
901 Main Street
Suite 3800
Dallas, Texas 75202
Telephone: (214) 785-6670
Facsimile: (214) 785-6680

**ATTORNEYS FOR PLAINTIFF STRATOPATENT LLC**